**Robert B. NOBLE, Defendant, Appellant,**

v.

**Ralph W. FARRIS, Plaintiff, Appellee.**

**No. 4922.**

United States Court of Appeals First Circuit.

May 6, 1955.

Charles F. Hartnett, II, Portsmouth, N. H., with whom James C. Cleveland, New London, N. H., was on brief, for appellant.

Gordon M. Tiffany, Concord, N. H., with whom Tiffany & Osborne, Concord, N. H., was on brief, for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

HARTIGAN, Circuit Judge.

This is an appeal from the District Court of the United States for the District of New Hampshire from a judgment of $1,000 for the plaintiff entered November 24, 1954.

The issue presented in this appeal is the validity of a general release executed by the plaintiff on March 21, 1952, approximately five weeks after a collison

4. See cases cited supra.

between the plaintiff's automobile, in which he and his wife were riding, and an automobile owned by the defendant's wife which at the time of the collision was being operated by the defendant, Robert B. Noble. This collision occurred in Portsmouth, New Hampshire on February 16, 1952. The plaintiff is a resident of Maine and the defendant is a resident of New Hampshire.

On February 3, 1954, the plaintiff's wife brought an action against the defendant for her personal injuries caused by this accident which resulted in a judgment for her with which judgment we are not concerned in this appeal. Joined with his wife's count for personal injuries was a count by the plaintiff seeking recovery for his wife's medical expenses and also for the loss of her comfort, assistance, society and benefit.

The defendant in his amended answer, in addition to other defenses, pleaded a release executed by the plaintiff as a bar to the plaintiff's action. This release reads as follows:

"To all to whom these Presents shall come or may Concern. Greeting: Know Ye, That, I, Ralph W. Farris, for and in consideration of the sum of Ninety and 71/100 Dollars ($90.71) lawful money of the United States of America to me in hand paid by Mrs. Robert Noble and Robert Noble the receipt whereof is hereby acknowledged, have remised, released, and forever discharged, and by these presents do for my heirs, executors, and administrators, remise, release and forever discharge the said Mrs. Robert Noble and Robert Noble, their heirs, executors and administrators, of and from all, and all manner of action and actions, cause and causes of action, suits, debts, dues, sums of money, accounts, reckoning, bonds, bills, specialities, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims and demands whatsoever, in law or in equity, which against Mrs.

Robert Noble and Robert Noble I ever had, now have or which my heirs, executors or administrators, hereafter can, shall or may have for, upon or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of these presents.

"In Witness whereof, I have hereunto set my hand and seal the twenty-first day of March in the year one thousand, nine hundred fifty-two.

                    Ralph W. Farris

Sealed and delivered in the presence of Mae Reynolds."

The issue raised by this release was tried by the district court without a jury prior to the trial on the merits. The defendant relied solely upon the release and introduced no evidence as to the intent of the parties in the execution of the release, consistently maintaining that the introduction of such evidence would violate the parole evidence rule. The plaintiff, who, it is important to note, is a lawyer of more than thirty-five years experience, testified in answer to a question by the trial judge that he did not have in mind to release any claims except for property damage to his automobile. The plaintiff also testified that he was aware that his wife had suffered from headaches and had complained of trouble with her neck and of difficulty in sleeping subsequent to the date of the accident and prior to his execution of the release. The plaintiff further testified that from his own experience in insurance work he knew that insurance companies very rarely, if ever, settle part of a claim and that the general practice was for the insurance company to "take a general release for everything."

It was also brought out through the plaintiff's testimony that he had received $90.71 as consideration for his general release and that the plaintiff's own estimate of his property damage was $91.06.

The trial judge ruled that this release did not bar the plaintiff, finding as a fact that the intention of the plaintiff was to release only such claim as he

might have for property damage to his automobile.

The defendant contends that there was not a mistake of fact by the plaintiff as he knew that his wife had claimed that she had been injured by the automobile driven by the defendant and that the plaintiff when he signed this general release took the risk that his wife's injuries might worsen.

The defendant further contends that even assuming a mistake of fact by the plaintiff, such a unilateral mistake does not warrant invalidating the release as a matter of law. We will not discuss whether or not the evidence supports the trial court's finding that there was a unilateral mistake on the part of the plaintiff as our determination of the question of law makes such discussion unnecessary. We note, however, that this case does not appear to present a situation involving a non-negligent unilateral mistake on the part of the plaintiff. See Ricketts v. Pennsylvania R. Co., 2 Cir., 1946, 153 F.2d 757, 164 A.L.R. 387.

The trial court found that the plaintiff intended to release only his claim for property damage when he, an experienced lawyer, signed a document which purported to release and forever discharge "* * * from all, and all manner of action and actions, cause and causes of action, * * * claims and demands whatsoever * * *" which the plaintiff had against the defendant and his wife. This conclusion is supported by the fact that the plaintiff accepted from the insurance company for the execution of the release an amount almost identical to his estimate of the damage to his automobile, but we are of the opinion that this finding alone does not justify invalidating this release.

There was no finding made by the trial court that it was the intention of the defendant through his insurance company to satisfy only the plaintiff's property damage claim. In fact, the plaintiff himself testified that it was the general practice of insurance companies to settle all claims at once.

We are presented here with a unilateral mistake on the part of the plaintiff. There has been no New Hampshire decision brought to our attention that stands as authority for the proposition that a unilateral mistake in itself constitutes sufficient ground for the invalidation of a release. In Poti v. New England Road Machinery Co., 1928, 83 N. H. 232, 140 A. 587, it was stated that the parties contracted a settlement on the understanding that the injured person's bruise was superficial whereas the bruise was in fact severe and serious. It was expressly stated that releases can be set aside because of a material mistake in the measurement of compensation "* * * on the theory of cancellation for mutual mistake applicable to contracts generally." Id., 83 N.H. at page 234, 140 A. at page 589. See Callen v. Pennsylvania R. Co., 1948, 332 U.S. 625, 68 S.Ct. 296, 92 L.Ed. 242. In the instant case there was no such finding of mutual mistake.

In Rickle v. Wyoming Valley Paper Mills, 1944, 93 N.H. 191, 38 A.2d 78, 80, the mistake was on the part of the injured person only, as the adjuster who obtained the execution of the release intended that the settlement was to be a " 'purchase of peace' " and thus a final settlement of all of the plaintiff's claims. However, it was decided that the release did not bar the plaintiff because the insurance company had innocently induced the plaintiff to believe "* * * that the signing of the * * * release did not preclude him from getting more money if the doctor's opinion regarding his early recovery proved again to be incorrect." Id., 93 N.H. at page 194, 38 A. 2d at page 80. In the instant case, there was no finding that the plaintiff was induced to sign this general release by the behavior of the defendant's insurance company. It would be difficult to believe that this particular plaintiff, a former attorney general of Maine and lawyer of long experience in insurance work, would rely on an insurance adjuster's statement of the legal effect of a general release.

There was no evidence of fraud or misrepresentation on the part of the defendant or his insurance company in obtaining this general release. There was a finding of unilateral mistake made by the trial court but no finding of innocent inducement of the plaintiff. See Currier v. North British Etc., Co., 1953, 98 N.H. 366, 101 A.2d 266.

It is our conclusion that the trial court committed an error of law in ruling that the release signed by the plaintiff was not a valid defense to this action solely because the plaintiff had intended to release only his claim for property damage.

The judgment of the district court is vacated and the case is remanded to that court for entry of judgment for the defendant.

MAGRUDER, Chief Judge (concurring).

I concur. As the opinion of the court points out, Mr. Farris was an attorney well experienced in insurance matters, and he made no mistake as to the terms or purported legal effect of the release which he executed. No doubt, the payment to Farris of $90.71 represented in his mind recompense for his property damage only. But he was so anxious to have the insurance company recognize liability for his property damage claim and pay him the estimated amount of his property damage that, in consideration of this payment, he was willing to execute and deliver to the insurance company a general release of all claims, without waiting to ascertain whether his wife's injuries amounted to anything and whether they would involve substantial medical expenses on his part. This may have been an unfortunate error of judgment on the part of the plaintiff, but it was an error which was not induced or contributed to by any misrepresentation or overreaching on the part of the insurance company. Under these circumstances I know of no precedent or equitable principle which would relieve the plaintiff from the legal consequences of executing the release.