Strafford
No. 81-169

VERNA JOHNSON

v.

PHENIX MUTUAL FIRE INSURANCE CO.

May 12, 1982

*Mullaney & Richardson P.A.*, of Rochester (*John G. Richardson* on the brief and orally), for the plaintiff.

*Wiggin & Nourie*, of Manchester (*Richard B. McNamara* on the brief and *Gordon A. Rehnborg, Jr.*, orally), for the defendant.

DOUGLAS, J. In this case we consider whether the plaintiff, whose property was damaged by fire, may recover insurance proceeds when she was not a named insured. We hold that the defendant insurance carrier is estopped from denying coverage.

The plaintiff, Verna Johnson, and her husband, Theodore Johnson, bought real estate in Farmington, New Hampshire, in March 1973. They received a warranty deed made out to "Mr. and Mrs. Johnson" and executed a mortgage deed in favor of the Strafford Savings Bank of Dover, New Hampshire. From 1973 until 1976, the Johnsons' fire insurance policies named both of them as insureds. When their policy expired in 1976, Theodore Johnson discussed fire insurance with Peter Howland at the Foss and Came Insurance Agency and decided to purchase coverage from the defendant, Phenix Mutual Fire Insurance Co. (Phenix). Although Mr. and Mrs. Johnson had both been named as insureds since the property was purchased in 1973, and despite his insurance agent's admonition that the names on the policy should be identical to the names on the deed to the property, Theodore Johnson told the agent that he wanted the policy in his name alone. On November 3, 1976, the defendant issued a policy naming only Mr. Johnson as the insured. Coverage expired one year from that date. Theodore Johnson handed an envelope containing the policy to the plaintiff, but she never examined the policy.

The mortgagee, Strafford Savings Bank, was named as the loss payee. The "Mortgage Clause" stated that "[l]oss, if any under this policy shall be payable to the mortgagee. . . . "

The plaintiff and Theodore Johnson were legally separated in December 1976, and the court awarded the plaintiff the parties' real estate, free and clear of Theodore's interest. In July 1977, within the policy period, a fire damaged but did not destroy one of the two buildings on the insured property. The damaged building was insured for $11,000. The plaintiff submitted a claim for payment to Phenix. The bank, the loss payee, also notified Phenix of the loss but did not make a demand for payment.

Because the bank was planning to foreclose due to delinquent payments, the plaintiff sold the property in November 1977 for $17,800. She paid approximately $15,000 to the Strafford Savings Bank in October 1977, satisfying the outstanding mortgage. The bank discharged the mortgage deed.

Phenix later refused to pay the plaintiff's claim, and she brought an action in superior court. *Goode*, J., ordered Phenix to pay the plaintiff the appraised loss, which exceeded the $11,000 policy amount, with interest, as well as the travel expenses she incurred in traveling from California to New Hampshire to pursue her

claim. Although the legal basis for the court's decision is unclear, we find that the court reached the correct result on the liability issue. That portion of the decree ordering Phenix to pay an amount exceeding the plaintiff's $11,000 policy limit, however, is reversed.

On appeal, Phenix argues that although a premium had been paid and a policy was in effect on the plaintiff's premises, *no one* is entitled to the proceeds for the following reasons. First, although Theodore Johnson was the named insured when the loss occurred, he is not entitled to the proceeds because he had no insurable interest in the property when the loss occurred, the superior court having awarded the premises to the plaintiff by its decree of legal separation. Further, the bank, which also had an insurable interest when the loss occurred, no longer has an insurable interest in the property because its mortgage was discharged. Finally, Phenix refused to pay the proceeds to the plaintiff because she was not a named insured when the loss occurred. The defendant cites *Currier v. Insurance Co.*, 98 N.H. 366, 101 A.2d 266 (1953), as authority for denying the plaintiff's claim. In *Currier*, this court, acknowledging that the law was "uncertain, unsettled and unsatisfactory," *id.* at 368, 101 A.2d at 268, held that a joint owner of real estate, who mistakenly obtained a fire insurance policy in his name alone, could recover only his proportional share of the proceeds even though he had insured the entire premises and it would not have increased the insurer's risk to add the second joint tenant's name. *Id.* at 370–71, 101 A.2d at 269. While we question the result reached in *Currier*, we need not re-examine that decision because it does not control this case due to a divergence in material facts.

In this case the Strafford Savings Bank had an insurable interest in the property when the loss occurred and when it notified Phenix of the loss. Thus, the bank was entitled to the insurance proceeds. Soon after the loss, the plaintiff wanted to sell the property and pay off her mortgage, but she did not want to do so without the defendant's permission. She consulted her attorney to find out if she could sell the property without losing the insurance benefits which were payable to the bank when the fire occurred. Her attorney, therefore, wrote to Peter Howland, the defendant's agent, asking permission to sell the property and to pay off the mortage. The defendant's agent responded "[s]uch sale would not effect [sic] any payment of claim resulting from fire 7/1/77. . . . " Thus, the plaintiff believed that the insurance proceeds payable to the bank at the time of loss would be paid to her. Relying on the agent's assurance, the plaintiff sold her property and paid the bank without asking the bank to assign its rights in the insurance

proceeds to her. The plaintiff later sought such an assignment but was unable to obtain it because the bank had discharged its mortgage and it no longer had any interest to assign. If the plaintiff had not been misled by Phenix's agent, she would not have sold the property, the insurance company would have paid the claim to the bank, and one of two things would have occurred. The bank would have offset the insurance proceeds against the principal owed, thus reducing the outstanding principal balance, leaving the plaintiff's equity in the property intact; or the plaintiff could have paid off the mortgage and received an assignment of the insurance proceeds from the bank.

 Peter Howland informed the plaintiff's attorney in writing that her claim would not be affected by sale of the property. Because Mr. Howland was the defendant's agent, his acts are imputed to Phenix to the extent permitted by common law, *Mannone v. Whaland*, 118 N.H. 86, 88, 382 A.2d 918, 919–20 (1978), and the insurer is bound by those acts. 3 G. COUCH, CYCLOPEDIA OF INSURANCE LAW § 26:53, at 518 (R. Anderson ed. 1960); *see Bergeron v. Fontaine*, 109 N.H. 370, 373, 256 A.2d 656, 659 (1969); *Fisher v. Prudential Insurance Co.*, 107 N.H. 101, 106, 218 A.2d 62, 66 (1966). Thus, we hold that the defendant is estopped from denying coverage. "Estoppel prevents one party from asserting a position contrary to one previously taken when it would be unfair to allow him to do so. It arises when one party has knowingly made representations upon which the other reasonably has relied to his detriment." *Appeal of Cloutier Lumber Co.*, 121 N.H. 420, 422, 431 A.2d 112, 113 (1981); *Johnson v. Liberty Mut. Ins. Co.*, 113 N.H. 8, 10, 300 A.2d 57, 59 (1973). Phenix misled the plaintiff into believing that her claim would not be affected by selling her property and paying off her mortgage. *See Johnson v. Liberty Mut. Ins. Co.*, 113 N.H. at 10, 300 A.2d at 59. It would be unfair to allow Phenix to refuse payment on the ground that the plaintiff is not a named insured when Phenix's agent led her to believe that she would receive the proceeds, and thus prevented her from taking precautions to protect her rights.

The second issue concerns the extent of the defendant's liability. After the loss, the plaintiff submitted a claim. She testified that a Phenix adjuster examined her property and took notes. The plaintiff was never told the results of this examination, however. The trial court concluded that the plaintiff's appraised loss exceeded her $11,000 policy limit, and he ordered Phenix to pay this appraised loss with interest.

■■ Our examination of the court's decree and of the record reveals no basis for this damage award. When a building is partially destroyed by fire, as in this case, RSA 407:11(b) provides that the insured is entitled to the "actual loss sustained not exceeding the sum insured." The trial court erred in ordering Phenix to pay more than the $11,000 policy limit. This case is remanded for an assessment of the plaintiff's actual loss, not to exceed the policy limit.

■■ An insured is entitled to attorney's fees "if the insurer acted in bad faith in promoting unnecessary litigation." *Lawton v. Great Southwest Fire Ins. Co.*, 118 N.H. 607, 615, 392 A.2d 576, 581 (1978). The plaintiff is awarded reasonable attorney's fees incurred on this appeal, SUP. CT. R. 23, double the amount of costs she incurred beginning with entry of this appeal, and interest at 12% on the amount which Phenix is ordered to pay. RSA 490:14-a (Supp. 1979); *see Appeal of Cloutier Lumber Co.*, 121 N.H. at 422, 431 A.2d at 113. In addition, the trial court is empowered to award reasonable attorney's fees under *Harkeem v. Adams*, 117 N.H. 687, 377 A.2d 617 (1977), against "a party who has instituted or prolonged litigation through bad faith or obstinate, unjust, vexatious, wanton, or oppressive conduct . . . ." *Id.* at 688, 377 A.2d at 617. The trial court's finding that the defendant's conduct was "unconscionable" and "shocks the conscience" supports an award of attorney's fees for representation at trial under *Harkeem, see St. Germain v. Adams*, 117 N.H. 659, 662–63, 377 A.2d 620, 623 (1977); therefore, on remand the court should consider the attorney's fees issue in addition to the travel expenses already awarded.

*Affirmed in part; reversed in part; remanded.*

All concurred.